# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § | Case No. 4:12-CR-76<br>Judge Crone/Judge Mazzant |
| | § § | |
| MATTHEW CLAYTON SICKING | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence and Statements (Dkt. #23). Having considered the relevant pleadings and the arguments of the parties, the Court is of the opinion that Defendant's motion should be denied.

### BACKGROUND

On March 15, 2012, Defendant, Matthew Sicking, was stopped by Texas Highway Patrol Trooper David Taylor and officers from the Sherman Police Department for a traffic violation. Defendant generally claims that there was insufficient probable cause to justify the initial traffic stop, that his detention exceeded the scope and justification of the initial stop, and that the search of the car Defendant was driving was without a warrant or sufficient probable cause.

On July 9, 2012, Defendant filed his Motion to Suppress Evidence and Statements (Dkt. #23). The Government filed a response on July 16, 2012 (Dkt. #24). The Court heard oral argument by the parties on July 26, 2012 (Dkt. #25). On July 30, 2012, the Government filed its Supplement to Response to Defendant's Motion to Suppress (Dkt. #27).

*Sergeant Jason Jeffcoat*

Sergeant Jason Jeffcoat ("Sergeant Jeffcoat") testified that he has worked for the Sherman

Police Department for a total of fourteen (14) years. His duties include supervising the Narcotics Division and pursuing investigations on dealers and users in the City of Sherman, Texas. On February 9, 2012, Sergeant Jeffcoat was performing an arrest of a known methamphetamine dealer, Mr. Carr, and a 940 telephone number with the name "Eggy" continued to call Mr. Carr's phone during the arrest. Officers performing the arrest were aware that Mr. Carr was being supplied by a person in the Gainesville area, and they later identified "Eggy" as Defendant, Matthew Sicking.

In March 2012, Sergeant Jeffcoat received information that Defendant was supplying large amounts of methamphetamine to drug dealers in Sherman, was in possession of a large amount of cash, and owned a sawed-off shotgun. This information was provided to Sergeant Jeffcoat by confidential informants, and he began his investigation on March 6, 2012. On March 9, 2012, Sergeant Jeffcoat began surveillance of Defendant with the assistance of five (5) or six (6) other officers. On March 13, 2012, a confidential informant reported that Defendant was out of methamphetamine and was collecting money in order to restore his supply. Sergeant Jeffcoat testified that he observed behavior consistent with this report, specifically that Defendant was making visits to several known drug houses in the area. Sergeant Jeffcoat never saw Defendant in possession of narcotics or weapons.

On March 15, 2012, a confidential informant made a call to Defendant and arranged to buy seven (7) grams of methamphetamine. Sergeant Jeffcoat was aware that the traffic stop would likely take place on Highway 82, and all Sherman patrol officers were tied up at the time, so he notified Texas Highway Patrol troopers to assist in the traffic stop. Sergeant Jeffcoat observed Defendant drive up in a black Mazda Millenia with a temporary paper license plate on the back. Prior to this date, Sergeant Jeffcoat learned that the license plate was registered to Blake Utter Ford, a dealership

in Denison, Texas. The dealership confirmed that the license plate was not valid for that vehicle. The temporary paper license plate was blowing in the wind as Defendant drove, and officers following him could not clearly see the numbers on the tag. For this reason, the Texas Highway Patrol troopers conducted the traffic stop of Defendant. Sergeant Jeffcoat testified that he was not sure what provision of the Texas Transportation Code prohibits obstruction of the view of a license plate, but that he believed it was a traffic violation. In addition, Sergeant Jeffcoat testified that he relayed to the Texas Highway Patrol troopers all information regarding the fictitious paper license plate, Defendant's suspected drug activities, and the possibility that Defendant was armed.

The traffic stop took place east of Whitesboro on Highway 82 and was handled as a felony traffic stop. Officers ordered Defendant out of the vehicle and directed him to lay on the ground. All four (4) officers present drew their weapons. Defendant complied with all the officers' requests, was handcuffed, and patted down for weapons. No weapons or narcotics were discovered on Defendant's person, only a large sum of money. Sergeant Jeffcoat testified that this type of stop is used if there is a fear for officer safety, or if any officer believes the driver is armed.

While other officers patted down Defendant, Sergeant Jeffcoat approached the vehicle and smelled the odor of burnt marijuana. In addition, he viewed a marijuana cigarette lying in plain view in the vehicle. After a search of the vehicle, the officers discovered methamphetamine in the center console of the vehicle.

Following the traffic stop, Sergeant Jeffcoat applied for a search warrant based on information discovered during the stop, in addition to other information gathered in the prior investigation. At Defendant's residence additional methamphetamine, a sawed-off shotgun, a stolen pistol, and cash were recovered.

On March 22, 2012, Detective McClaren and Detective Raines went to the Grayson County Jail on unrelated business. While they were conducting their business, they were approached by Defendant, who asked to speak with them. He was given his Miranda warnings and taken to an interview room at another location where he gave information about his drug activities to the officers. From his office, which has access to the interview room, Sergeant Jeffcoat observed Defendant giving a statement.

*Trooper David Taylor*

Texas Highway Patrol Trooper David Taylor ("Trooper Taylor") testified that he has worked as a trooper for nine (9) years. His duties include crash investigation, crash reconstruction, and conducting traffic stops. Trooper Taylor testified that he frequently conducts stops for other agencies due to the location of the stop or if agencies have inadequate manpower to conduct the stop safely. On March 15, 2012, Trooper Taylor was contacted by the Sherman Police Department to assist with a stop. Due to the fact that firearms could be involved with the stop, Trooper Taylor requested assistance from another trooper as well. The vehicle was stopped on Highway 82 in the Sadler area, and Trooper Taylor testified that there was no problem with the vehicle pulling over. Due to officer safety, Trooper Taylor requested that Defendant get out of the vehicle and lay down on the side of the road. Trooper Taylor testified that Defendant complied with every request the officers made.

Trooper Taylor stated that the reason for the stop was that the temporary dealer license plate was blowing in the wind. In addition, Trooper Taylor was aware that the license plate was registered to a different vehicle; however, he was unable to confirm that, because he could not obtain a number from the vehicle until after the stop. Trooper Taylor testified that the stop of Defendant's vehicle was legitimate because it is a traffic violation to have an obscured or obstructed license plate.

4

On cross-examination, Trooper Taylor testified that after he conducted the pat-down of Defendant and found no weapons or contraband, he did not feel like his safety was at issue at that point. However, he also testified that the stop was not yet concluded, since he still needed to run the license. Trooper Taylor testified that Defendant had no warrants and a valid license. In addition, Trooper Taylor needed to confirm the VIN number on the vehicle, which can be obtained from outside the vehicle. Trooper Taylor stated that the officers asked Defendant for consent to search the vehicle, and Defendant denied consent to search. After Defendant denied consent, Trooper Taylor walked back to the vehicle and observed the marijuana cigarette from outside the vehicle. At that time, he determined the officers had probable cause to search the vehicle, and he assisted with the search. Trooper Taylor stated that he did not give Defendant a ticket for the license plate infraction.

**ANALYSIS**

Defendant argues that the stop of his vehicle was illegal because no probable cause existed for the initial stop (Dkt. #23 at 2). Defendant also argues that the search of Defendant's vehicle after the initial stop had already concluded was a violation of his Fourth Amendment rights. Defendant contends that there was no search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, because he had no access to the vehicle and did not have immediate control of an area from which he could gain possession of a weapon. *Id*. In addition, Defendant argues that the officers had no reason to believe that a search of the vehicle contained evidence of the offense of arrest. *Id*. at 3.

The Government argues that Defendant was lawfully stopped for questioning when the officer was unable to observe the license plate on Defendant's car (Dkt. #27 at 1). In addition, the

Government argues that the officers were aware that the license plate was registered to a different vehicle at the time that they made the stop, which is another lawful reason to stop Defendant for investigation. *Id*. The Government also argues that Trooper Taylor had reasonable suspicion that Defendant was transporting illegal narcotics in the vehicle based on the information relayed to him by Sergeant Jeffcoat (Dkt. #24 at 4). Finally, the Government contends that the officers observed the marijuana in plain view when they approached the vehicle, which provided additional probable cause to search the vehicle. *Id*. at 6.

Defendant argues that his arrest and the subsequent search of his vehicle violated his Constitutional rights under the Fourth Amendment, because law enforcement made the arrest and search without a warrant and without probable cause. The Fourth Amendment ensures that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The warrantless search of an area in which the Defendant has a privacy interest is per se unreasonable, unless the Government can show that an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). Fourth Amendment jurisprudence recognizes several warrant exceptions. The Supreme Court held that an officer may perform a warrantless search of a home incident to arrest, so long as the search is limited to the area within the arrestee's "immediate control," which means "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The Supreme Court applied the holding in *Chimel* to occupants of automobiles in *New York v. Belton*, 453 U.S. 454 (1981). The Court held that an officer who arrests "the occupant of an automobile...may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers found inside. *Id.* at 460.

In support of his motion to suppress evidence, Defendant relies upon the Supreme Court decision of *Arizona v. Gant*, 556 U.S. 332 (2009). In *Gant*, officers arrested a driver for a suspended license, handcuffed him, and placed him in the back of a police car. Officers searched the interior of the car that the arrestee had exited, uncovering a gun and a bag of cocaine. *Id*. at 335-37. In holding that this search violated the Fourth Amendment, the Supreme Court rejected a broad interpretation of *Belton* that would permit a search of the entire passenger compartment of a vehicle with no regard to whether the interior compartment was actually accessible to the arrestee at the time of the search. *Id*. at 343. Instead, the warrant exception described in *Chimel* only applies to an officer "search[ing] a vehicle incident to a recent occupant's arrest...when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. The Court noted that under this rule, "it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." *Id*. at 343 n.4 (citation omitted).

Defendant argues that, under *Gant*, the search-incident-to-arrest exception did not validate a warrantless search during and after his arrest. Defendant bases this argument on the fact that, during the search of his vehicle, he was already under arrest and had no access to his vehicle or its contents. According to the testimony provided at the motion hearing, Defendant was handcuffed and several officers were on the scene when the search of his vehicle took place. Following the reasoning in *Gant*, a reasonable officer could not consider Defendant capable of accessing his vehicle at the time the search was conducted, which would not validate a warrantless search.

However, the Court notes that while *Gant* limits the search-incident-to-arrest exception, *Gant* also affirmed the viability of the probable cause exception for automobiles. *Id*. at 343. When

7

searching a vehicle without a warrant, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *United States v. Ross*, 456 U.S. 798, 809 (1982). "An individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Id*. at 823. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825. In *Gant*, the Supreme Court notes that "*Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Gant*, 556 U.S. at 347. Therefore, if the law enforcement officers had probable cause, then Defendant's motion to suppress should be denied.

Probable cause is defined as "whether at that moment the arrest was made, the officers had...facts and circumstances within their knowledge and of which they had reasonably trustworthy information that was sufficient to warrant a prudent man in believing that [Defendant] had committed or was committing an offense." *Charles v. Smith*, 894 F.2d 718, 723 (5th Cir. 1990) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). The existence of probable cause is determined by reviewing the totality of the circumstances. *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The legality of traffic stops are analyzed for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). "This standard is a two-tiered reasonable suspicion inquiry: (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place." *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) (citing *Terry*, 392 U.S. at 19-20). "In

addition, 'the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'" *Id*. (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "However, once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion." *Id*. "'At that point, continuation of the detention is no longer supported by the facts that justified its initiation.'" *Id*. (quoting *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993)).

The Court finds it was lawful to conduct a traffic stop of the vehicle driven by Defendant. Defendant's paper license plate was blowing in the wind and was not visible to the officers. This is a violation of Texas Transportation Code § 504.945, which states that a person commits an offense if the plate is obscured by blurring that significantly impairs the readability of the letters or numbers of the license plate number at any time, or a covering or other material that alters or obscures the letters or numbers of the license plate number. TEX. TRANSP. CODE § 504.945. It is also a violation to have a license plate that is registered to another vehicle. *Id*.; *see also* TEX. TRANSP. CODE § 502.475. "A police officer may stop a vehicle if he has probable cause to believe a traffic violation has occurred." *United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007) (quoting *United States v. Cole*, 444 F.3d 688, 689 (5th Cir. 2006)). Here, the officers observed Defendant committing a traffic violation with his obstructed paper license plate, and were aware that Defendant's paper license plate was registered to another vehicle. Therefore, the initial stop of the vehicle was proper and did not violate the Fourth Amendment.

It is unclear from the testimony offered at the hearing on July 26, 2012, which officer saw the marijuana cigarette and smelled the odor of burnt marijuana first. Sergeant Jeffcoat testified that after Defendant was handcuffed on the ground, he approached the driver's side door to close the

door. Sergeant Jeffcoat testified that as soon as he approached the door he could see the marijuana cigarette and smell the odor of burnt marijuana. Trooper Taylor testified that after he assisted with the pat-down of Defendant and ran Defendant's driver's license, he approached Defendant's vehicle to obtain the VIN number from the outside of the vehicle. He further testified that the purpose of the stop was not concluded at that point. Trooper Taylor asked Defendant for consent to search his vehicle, which Defendant denied. Trooper Taylor testified that he then approached the vehicle and observed the marijuana in plain view inside the vehicle. He stated that he did not need his flashlight to observe the marijuana inside.

The Court concludes that Trooper Taylor did have reasonable suspicion that Defendant was engaged in criminal activity before the initial purpose of the traffic stop was complete. The officers had reasonable suspicion based on the information obtained by the officers during their prior investigation of Defendant, combined with the information Sergeant Jeffcoat received from a reliable confidential informant, that Defendant would be transporting contraband in his vehicle on that day and delivering it to the informant. The Fifth Circuit recently stated the following:

> [W]e do not find that a detention during a valid traffic stop violates the detainee's Fourth Amendment rights where it exceeds the amount of time needed to investigate the traffic infraction that initially caused the stop, so long as (1) the facts that emerge during the police officer's investigation of the original offense create reasonable suspicion that additional criminal activity warranting additional present investigation is afoot, (2) the length of the entire detention is reasonable in light of the suspicious facts, and (3) the scope of the additional investigation is reasonable in light of the suspicious facts, meaning that it is reasonable to believe that each crime investigated, if established, would likely explain the suspicious facts that gave rise to the reasonable suspicion of criminal activity.

*United States v. Pack*, 612 F.3d 341, 358 (5th Cir. 2010). The Court finds that the length of the entire detention of Defendant was reasonable in light of the suspicious facts the officers obtained

prior to the traffic stop itself. In addition, during Trooper Taylor's investigation, he was able to obtain probable cause to search the vehicle when he observed the marijuana inside the vehicle. The scope of his initial investigation was not overly broad and was the least intrusive to either confirm or deny his suspicions, since he was standing outside the vehicle looking in when he observed the marijuana. Based on the totality of the circumstances, including the information received during the investigation and the information provided by the informant, the Court finds that the officers had probable cause to search Defendant's vehicle. Therefore, the Court recommends Defendant's motion to suppress be denied.

## RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant's Motion to Suppress Evidence and Statements (Dkt. #23) be **DENIED**.

Within five (5) days[1] after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

---

[1] At the hearing on July 26, 2012, the parties agreed to shorten the time for filing objections.

**SIGNED this 8th day of August, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE